UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR-07-16-B-W |
| | ) | |
| MANUEL HORTA, | ) | |

**SENTENCING ORDER**

The Court concludes that for defendants convicted of possessing cocaine base and another illegal drug, the conversion table for marijuana equivalency in Application Note D to U.S.S.G. § 2D1.1 contains a computational anomaly that enhances the sentencing range for a limited set of defendants, based on the quantity of cocaine base alone. Unable to assign a rational policy basis for the resulting sentencing range distinctions among similarly situated defendants, the Court will impose a sentence outside the guidelines to avoid "unwarranted sentence disparities" under 18 U.S.C. § 3553(a)(6).

## I. A COMPUTATIONAL ANOMALY

Convicted of possessing powder and crack cocaine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1), Manuel Horta comes for sentencing. On November 1, 2007, the United States Sentencing Commission amended the guidelines for crack cocaine and as a result, taking crack cocaine alone, Mr. Horta's base offense level is 24. However, because Mr. Horta possessed powder cocaine as well as crack cocaine, under a quirk in the mathematical calculation of drug equivalency for the possession of multiple drugs, his base offense level for the possession of cocaine base alone increases from 24 to 26, the same level he would have been before the amendments. United States Sentencing Commission, *Guidelines Manual*, § 2D1.1, comment 10(D)(i)(II) (Nov. 2007).

Standing alone, this increase is not surprising: a crack cocaine dealer, who deals in other illegal drugs, could deserve a higher sentence than one who deals in crack cocaine alone. What is perplexing is that this increase occurs solely by virtue of the computation translating the quantity of crack cocaine to its marijuana equivalency and not as a result of the addition of the other illegal drug. What is also puzzling is that the increase does not occur uniformly across the drug equivalency tables and therefore, the result appears to be a computational anomaly, not a deliberate policy choice. Essentially, because the tables for the calculation of drug equivalency contain a limited number of categories broader than the categories for the calculation of sentencing ranges and because the tables use different multipliers to calculate marijuana equivalency, the guidelines impose harsher sentences against a restricted cadre of defendants, solely based on the quantity of cocaine base, while most similarly situated defendants experience no increase. This Order explores this anomaly.

## II. THE GUIDELINE CALCULATIONS

On October 10, 2007, Manuel Horta pleaded guilty to possessing 14.2 grams of cocaine powder and 13 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). *Prosecution Version* (Docket # 47). The Presentence Investigation Report correctly calculated the guideline sentencing range to fall under U.S.S.G. § 2D1.1(c)(7), establishing a base offense level of 26. *Presentence Report.* To arrive at this conclusion, the guidelines require a series of steps. First, a calculation is made based on the 13 grams of cocaine base; this turns out to be level 24. U.S.S.G. § 2D1.1(c)(8) ("At least 5 G but less than 20 G of Cocaine Base"). Next, because Mr. Horta is also responsible for a quantity of powder cocaine, it is necessary to turn to the drug equivalency tables to convert the quantity of cocaine base to its equivalent quantity of marijuana. *Id.* § 2D1.1, comment 10(D)(i). Here, the result is counterintuitive. Thirteen grams of cocaine

base equals 208 kilograms of marijuana: 13 grams x 16 kg of marijuana per gram of cocaine base = 208 kg of marijuana equivalent. *Id.* § 2D1.1, comment 10(D)(i)(II). Then, the powder cocaine is translated into its marijuana equivalent: 14.2 grams + 179.6 grams + 120.9 grams = 314.7 grams x 200 = 62.94 kg of marijuana equivalent. *Id.* § 2D1.1, comment 10(D)(i)(III). Combining the two numbers, the total marijuana equivalent is 270.94 kg, which fits within offense level 26. *Id.* § 2D1.1(c)(7) ("At least 100 KG but less than 400 KG of Marijuana").

This result changes the sentencing ranges for Mr. Horta. Because he possessed a firearm, he is subject to a two-level enhancement under U.S.S.G. § 2D1.1(b)(1). He accepted responsibility under U.S.S.G. § 3E1.1 and is entitled to a three-level reduction. Finally, he fits in criminal history category II. If he starts out at a base offense level of 26, the result is a sentencing range between 63 and 78 months. If he starts out at a base offense level of 24, the sentencing range is 51 to 63 months; however, because he is subject to a mandatory term of five years, the range is 60 to 63 months. 21 U.S.C. § 841(b)(1)(B).

## III. DISCUSSION

### A. A Counterintuitive Jump in Offense Level

It is odd that, solely by the application of the marijuana equivalency tables for his possession of other drugs, Mr. Horta's offense level jumped two levels from 24 to 26 for his possession of cocaine base alone. Under the amended cocaine base calculations, the possession of 13 grams of cocaine base results in a base offense level of 24. However, under the marijuana equivalency tables, 13 grams of cocaine base equals 208 kgs of marijuana equivalent and places Mr. Horta squarely in offense level 26 (100 to 400 kg of marijuana equivalent). Thus, even though the drug equivalency tables are designed to take into account a crack cocaine dealer's possession of another controlled substance, the possession of 13 grams of cocaine base by itself

causes a two-level increase. Ironically, in Mr. Horta's case, his possession of powder cocaine, though it triggers the use of the marijuana equivalency tables, has no mathematical impact on his offense level. Thus, a provision designed to enhance the offense level because the defendant possesses cocaine base and another illegal drug, actually enhances the offense level for his possession of cocaine base alone.

**B. Whether the Result is Intended**

This may be an intended result. It is entirely logical that a defendant convicted of dealing crack cocaine and another controlled substance should face a higher sentence than one convicted of dealing crack cocaine alone. However, this two-level jump under the marijuana equivalency tables occurs in limited instances. The marijuana equivalency tables provide for calculations from base offense levels 12 to 38, a total of 14 levels. U.S.S.G. § 2D1.1, comment 10(D)(i)(II). But, under the tables, the offense level jumps only at four of these levels: 24, 30, 32, and 36. The policy behind enhancing the offense level for these four levels and not the others is obscure.

**C. Markedly Different Results**

The drug equivalency table where Mr. Horta fits – offense level 24 – is extremely broad. Offense level 24 captures between 5 and 20 grams of cocaine base. The table requires that for base offense level 24, the quantity of cocaine base must be multiplied by 16 to arrive at the marijuana equivalency. The result is between 80 (5 x 16 = 80) and 320 kgs (20 x 16 = 320) of marijuana equivalent. Turning back to the offense levels, offense level 24 includes between 80 kg and 100 kg of marijuana; offense level 26 includes between 100 kg and 400 kg of marijuana. Thus, 80 kgs comes within offense category 24 and the translation into marijuana equivalency would not change the base offense level, but 320 kgs comes within offense category 26 and the marijuana equivalency computation thus boosts the defendant into a higher category. The

breakpoint between remaining in offense level 24 and jumping to offense level 26 is 6.25 grams of cocaine base, which translates into 100 kgs of marijuana equivalent. From 6.25 grams to 20 grams, the defendant, who but for this computation would be in offense level 24, finds himself in offense level 26.

At the next offense level of 26, the calculations under the guidelines become more counterintuitive. The offense level stays exactly the same throughout offense level 26. If the defendant possessed from 20 to 35 grams of cocaine base, the equivalency table mandates a multiplier of 5 (not 16) to convert to the marijuana equivalent. Using 5 as a multiplier, a defendant can possess up to 35 grams of cocaine and still fit within offense level 26: 35 x 5 = 175, well within the 100 to 400 kgs of marijuana for offense level 26. The net effect is that a defendant can be responsible for from 6.25 to 34.9 grams of cocaine combined with another illegal drug and be subject to the same base offense level of 26.

This contrasts with the other offense levels that jump the defendant's base offense level. Level 30 captures from 50 to 150 grams of cocaine base, but the offense level increases to 32 only at 71.5 grams, about half way through the range. Level 32 includes from 150 grams to 500 grams, but the offense level does not increase to level 34 until 447.8 grams, nearer the top of the range. Finally, level 36 attaches to 1,500 to 4,500 grams, but does not rise to level 38 until 4,477.7 grams, at the very top of the range. Application of the marijuana equivalency tables does not affect any other base offense level.

### D. The Crack Cocaine Amendments and *Kimbrough*

The Court is at a loss. There does not appear to be any rational basis for this differential treatment of similarly situated defendants. Imposing harsher sentences for those who sell other illegal drugs with crack cocaine is a legitimate goal, but sporadically including only a smattering

of such defendants for harsher treatment is not. Enhancing the sentences for those at the lowest end of cocaine base possession – 6.25 to 20 grams – and leaving unaffected others responsible for significantly more is equally confounding.

The proper sentencing ranges for crack cocaine offenses, particularly as opposed to powder cocaine, have been the source of controversy. *See United States v. Pho*, 433 F.3d 53 (1st Cir. 2006). After extensive study, effective November 1, 2007, the United States Sentencing Commission amended the guidelines to alter the 100-to-1 drug quantity ratio between crack and powder cocaine. U.S.S.G. App. C, Amend. 706 (2007). The Commission explained that the amendment "modifie[d] the drug quantity thresholds in the Drug Quantity Tables so as to assign, for crack cocaine offenses, base offense levels corresponding to guideline ranges that include the statutory mandatory minimum penalties." *Id.* The Commission noted that "[c]rack cocaine offenses for quantities above and below the mandatory minimum threshold quantities similarly are adjusted downward by two levels." *Id.* In fact, on December 11, 2007, the Commission made these amendments retroactive to sentences imposed before November 1, 2007. U.S.S.C. § 1B1.10 *Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement)* (effective March 3, 2008).

The Commission went on to say that the amendment "also includes a mechanism to determine a combined base offense level in an offense involving crack cocaine and other controlled substances."[1] U.S.S.G. App. C, Amend. 706. However, there is no suggestion in the Commission documentation as to why this particular computational anomaly exists. Coordinating the math between the statutory mandatory minimums and the guidelines is easier in

[1] The Commission also made a technical change in the commentary to section 2D1.1, which is not relevant to the issues here. U.S.S.G. App. C, Amend. 711 (2007).

theory than in practice and it may be that in making the attempt, the Commission promulgated an unintended consequence.

The United States Supreme Court recently reviewed the controversy surrounding the disparate impact the guidelines have had on crack as opposed to powder cocaine, *Kimbrough v. United States*, 128 S. Ct. 558 (2007). *Kimbrough* emphasized that, in imposing a sentence for crack cocaine, a district judge "may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses." *Id.* at 564. *Kimbrough* suggests that if the Court determined that there was a similar, unintentional disparity among similarly situated defendants under the new guidelines, a sentencing judge could determine that "a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." *Id.*

## IV. CONCLUSION

Consistent with *Kimbrough*, the Court may sentence outside the guidelines and impose a statutory sentence in accordance with the factors in 18 U.S.C. § 3553(a). In addition to the parsimony provision, which requires that the sentence be "sufficient, but not greater than necessary, to comply with the [statutory] purposes," 18 U.S.C. § 3553(a), one further factor is "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct . . . ." 18 U.S.C. § 3553(a)(6). Here, although it takes the guidelines and the policies underlying the guidelines into account, the Court will impose a non-guideline sentence, based on its determination that to impose a sentence based on the guideline calculations would be contrary to the dictates of the statute.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of February, 2008

**Defendant (1)**

**MANUEL HORTA** represented by **VIRGINIA G. VILLA**
FEDERAL DEFENDER'S OFFICE
KEY PLAZA, 2ND FLOOR
23 WATER STREET
BANGOR, ME 04401
(207) 992-4111 Ext. 102
Email: Virginia_Villa@fd.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**USA** represented by **JOEL B. CASEY**
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF MAINE
202 HARLOW STREET, ROOM 111
BANGOR, ME 04401
945-0344
Email: joel.casey@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*